<hr />

Ed. Mulloy *vs.* Isaac Paul and others.

October Term, 1874.

LIMITATION OF ACTIONS—VOLUNTARY GRANTEE—CREDITOR OF GRANTOR.—
Continuous adverse possession of land by a voluntary grantee for seven years, under a deed made before, but registered within seven years, is a good defence to a bill by a creditor of the grantor, whose debt was in existence at the date of the voluntary conveyance and the commencement of possession by the grantee, but not reduced to judgment until within seven years before the filing of the bill.

*Helms*, for complainant.
*East*, for defendants.

The Chancellor:—Bill filed March 27, 1874, by complainant, as a judgment creditor of Isaac Paul, to subject to the satisfaction of his judgment certain lands conveyed by Paul to his co-defendants by deeds of gift. In 1859 Paul became the surety of one Alley, as trustee, and on the 7th of May, 1866, the complainant brought suit at law, on this bond, against Alley and Paul, and, on the 14th of April, 1871,

recovered judgment against them, in said suit, for $1,467.02.. On this judgment executions have been issued, and been returned no property found, and, thereupon, this bill was. filed. The lands sought to be reached were conveyed to. his children, by Paul, by deeds of gift, on the 1st of January, 1866, but the deeds were not registered until the 13th of April, 1867. The bill charges that Paul, at the time of executing these deeds, was indebted to insolvency, and that the deeds are fraudulent in law.

The defendants, by consent of the complainant, appear and file several pleas. The first plea is, in substance, that. Paul made the conveyances on the 1st of January, 1866,. which were registered 13th of April, 1867, and that defendants took possession of the property thus conveyed on the date of the conveyances, viz., on the 1st of January, 1866,. and have been in the continuous, uninterrupted possession thereof, under said assurances of title, ever since, and for more than seven years next before complainant commenced. this suit, adversely to all the world, and are, therefore,. under the Code, § 2763, entitled to hold the said land. against complainant.

The second plea is the same in substance, except that it. states that the deeds of gift were duly proved and registered, without specifying when.

The third plea is that the defendants, on the 1st day of January, 1866, went into possession of said land, and have had continuous, peaceable, and adverse possession for more than seven years before the commencement of this action.

The fourth plea is that complainant's cause of action, as. exhibited in the bill, did not accrue to him within six years. next before the commencement of this suit.

The intention of the defendants, on the one side, in filing these pleas, and of the complainant, on the other side, in permitting them to be filed, is, as I learn from them, to test. the question whether the complainant is barred of his action as against the grantees in the deeds of gift, upon the statement of facts in the bill, with the additional fact that the.

grantees took possession of the lands conveyed to them on the 1st of January, 1866, and have had uninterrupted, peaceable, and adverse possession thereof against all the world ever since.

Previous to the act of 1852, ch. 365, § 10, carried into the Code in §§ 4288 to 4293, inclusive, it was one of the vexed questions of our law when the statute of limitations began to run in favor of a fraudulent or voluntary vendee as against a creditor of the vendor, and the decisions were irreconcilably in conflict, both upon the points decided and the reasons for the decisions.

In *Kegler* v. *Miles*, M. & Y. 426, it was held that adverse possession of personal property, for the time required to bar the action of the owner for its recovery, vests the title to such property in the possessor. This decision has been since followed in this state. The 1st section of the act of limitations of 1819, carried into the Code, §§ 2763, 2764, expressly enacted that such adverse possession of land, without any claim by action successfully prosecuted, held under an assurance of title purporting to convey an estate in fee, would, in like manner, vest the possessor with a good and indefeasible title to the land. Under this act it has been held that it is not necessary that the assurance of title shall be valid. It will be effectual, even if fraudulent or void. *Gray* v. *Darby*, M. & Y. 396; *Clark* v. *Chase*, 5 Sneed, 636. Nor is it necessary that the assurance of title shall be registered, in order that the statute may run. *Stewart* v. *Harris*, 2 Swan, 656; *Jones* v. *Perry*, 10 Yerg. 81. And possession without deed may be coupled with possession under a deed to complete the bar. *Valentine* v. *Cooley*, Meigs, 613; *James* v. *Patterson*, 1 Swan, 311; *Fain* v. *Headerick*, 4 Coldw. 335. And it has also been held that, where a creditor seeks to subject the land of his debtor adversely held, if the debtor be barred, the creditor is barred also. *Baker* v. *Morgan*, 5 Sneed, 521.

Under the 2d section of the act of 1819, Code, § 2765, no assurance of title at all is necessary to protect the

adverse possessor to the extent of actual possession, as defined by the decisions. *Brown* v. *Baldridge*, Meigs, 1; *Jarnagin* v. *Mairs*, 1 Humph. 473; *Marr* v. *Gilliam*, 1 Coldw. 489; *Haynes* v. *Jones*, 2 Head, 372.

The material point, it will be noticed, is adverse possession for the length of time sufficient to bar the actual owner or holder of the legal title. If he were barred, all persons claiming through him, such as heirs or creditors, would be barred also.

In *Reeves* v. *Dougherty*, 7 Yerg. 222, it was held that, where the possession of personal property has been acquired by a fraudulent sale, the statute of limitations begins to run from the time the fraudulent grantee obtained possession, and, if the title of the fraudulent grantor has been vested in the grantee by the statute, the judgment creditor of the grantor is barred also. The question is fairly discussed upon principle. " The object here," says Catron, C. J., " is to aid an execution at law; to give effect to a legal writ and legal right because of the concurrent jurisdiction in equity; to relieve against the fraudulent conveyance tending to hinder the creditor of the grantor." * * * " The complainants come in asserting their debtor's right to the property, treating—as they have a right to do—the fraudulent conveyance as merely void." * * * " But the debtor's right of property was gone when the bill was filed, and the complainants are equally barred." " There is," adds the learned judge, " no fair distinction between a lien by execution and a lien by an implied trust otherwise arising." At most, the idea is, the fraudulent vendee holds as a trustee by implication, and the statute of limitations always runs in favor of such trustees. *Cocke* v. *McGinnis*, M. & Y. 361, a case of personalty, and *Porter* v. *Cocke*, Peck, 41, a case of realty, are cited to sustain this position. " There is no principle," continue the court, " upon which to rest the bar other than the one stated, that the creditor must take the title as it stands between the fraudulent vendor and vendee at the time he files his bill or levies his

execution. If time has confirmed the title to lands or slaves, it is in accordance with the established policy of the country that the general repose of society is preferred to the few chance cases of hardship which the general rule inflicts."

The case of *Porter's Lessee* v. *Cocke*, Peck, 30, 39, is strikingly in point. The action was ejectment. The plaintiff claimed under execution sale made on the 29th day of August, 1809, obtained the sheriff's deed on the 15th of August, 1816, and brought suit two days thereafter, on the 17th of August, 1816. The sale at which Cocke purchased, and which was alleged to have been fraudulent, was made on the 12th of November, 1808. Cocke went into possession in the winter of 1808-9, and, on the 30th of August, 1809, received a deed from the sheriff. It will be noticed that the suit was brought within seven years from the date of this deed, but not from the time Cocke went into possession. It was held, first, that the sheriff's deed to Cocke related back to the day of sale, so as from that day to protect and make adverse the possession, which, under the act of 1797, 43, 4, was required to be " by virtue of a grant or deed of conveyance founded on a grant;" second, that the deed was sufficient to sustain the possession, although fraudulent as to creditors; third, that fraud in the acquisition of the land does not prevent the operation of the statute. The principle of the ruling is the same relied on in *Reeves* v. *Dougherty*, and is stated by quoting the language of Lord Redesdale in the famous case of *Hovenden* v. *Lord Annesley*, 2 Sch. & Lef. 633, viz.: " That, in a case where a person who is in possession by virtue of a fraud is not, in the ordinary sense of the word, a trustee, but is to be constituted a trustee by a decree of a court of chancery, founded on the fraud, and his possession in the meantime is adverse to the title of the person who impeaches the transaction on the ground of fraud," then the statute will operate. This is, in fact, a familiar principle.

In both of the foregoing cases, although the reasoning of the court goes upon the ground that the statute begins to run from the date of possession—and in the 7 Yerg. case it is so expressly stated—and not from the date of the creditor's judgment, yet the judgments were, as a matter of fact, in existence during the time of the running of the statute. For this reason the learned judge who delivers the opinion of the court in *Jones* v. *Read*, 1 Humph. 335, 346, treats the latter ruling as a *dictum*, and expressly holds that the bar of the statute only commences in favor of a fraudulent vendee of land against the creditor from the recovery of judgment by the latter, and not from the commencement of possession. The decision is put exclusively upon the ground that, by 1819, 28, 2, Code, § 2765, it is provided that no person shall sue for lands but within seven years next after his right of action shall have accrued, and that the creditor had no right of action until he recovered judgment. This ruling was followed at the same term, in *Marr* v. *Rucker*, 1 Humph. 348, where the property was personal, upon the strength of the previous decision, although the facts of the case did not, as the judge concedes, require it. But, in this view, there is no statute of limitations which will protect a fraudulent vendee against judgments which may be recovered, no matter how many years after possession taken, and the main object of the statute, in a large class of cases, would be annulled. "Society," to use Judge Catron's language, in 7 Yerg. 235, "would have no repose under such circumstances."

Accordingly, in the very next case in which the question arose—as it did directly—namely, in *Knight* v. *Jordan*, 6 Humph. 101, the decision was different. In that case the deed of gift of the debtor was of certain slaves, but the registration, by reason of the defective probate, was invalid. The deed of gift was, therefore, void "as to existing or subsequent creditors" of the grantor. 1831, 90, 1 and 12; 1841, 12, 2. Yet, in a contest between the grantee and purchasers under execution sale made within three years

11

after recovery of judgment by subsequent creditors, the court, through the same learned judge who delivered the opinion in the case of *Marr* v. *Rucker*, 1 Humph. 348, held that the operation of the statute of limitations, as to personalty, is the same with that of the 1st section of the act of 1819 in relation to land. "This general principle," they say, "has been established in many cases, and the decisions in 1 Humph. 345, 353, if they be supposed to have been against it, cannot unsettle or shake it." And see *Tubb* v. *Williams*, 7 Humph. 371.

It will be seen, from this review of the cases, that the question as to the point of time when the statute of limitations begins to run, in favor of a fraudulent vendee of land against the creditors of the vendor, cannot be considered as positively settled by the decisions. There is, it is true, a direct decision that it begins to run only from the date of the judgment, in *Read* v. *Jones*. But the decision is somewhat shaken by the subsequent reference to it in *Knight* v. *Jordan*. Moreover, when we seek to ascertain the principles which underlie the decisions, it is clear that *Reeves* v. *Dougherty*, and *Knight* v. *Jordan*, have the better basis. *Read* v. *Jones* rests upon a literal and forced construction of the 2d section of the act of 1819. For that section must, upon the plainest rules of statutory exegesis, be construed in connection with the 1st section, which vests an indefeasible title after seven years' adverse possession—a positive provision directly annulled by the construction put on the 2d section. The right to sue, the statute contemplates as contemporaneous with the possession, and the provision of the 2d section is only the converse of the provision of the 1st section. To allow a right perfected by the statute, under the 1st section, to be set aside in favor of a party who acquires his right twenty years afterwards, but through a party to the original transaction who is himself barred, is absurd. It was the supposed hardship on the creditor that produced the decision in *Read* v. *Jones*. It was a case for legislation, but not judicial legislation.

Legislation was furnished by 1852, 365, 10, brought into the Code, §§ 4288, 4293.

That statute rectifies the defect in the old law by allowing a creditor, without first having recovered a judgment at law, to file his bill to set aside fraudulent conveyances. It also makes this provision : " In no case shall the limitation of actions be held to commence running in favor of a fraudulent or voluntary possession, until the creditor to be affected by the fraudulent or voluntary conveyance has a right of action to test the validity of such conveyance." This is a wise provision, and does what the courts could not do without a sacrifice of principle, and a conflict of decisions. It saves the creditor's right until his right of action accrues ; but, in order to avoid the very evil suggested as the result of the judicial legislation of *Read* v. *Jones*, it expressly provides that the right of action accrues as soon as the debt becomes due, without waiting to reduce the debt to judgment. By the terms of § 4293 the limitation commences running as soon as the right of action accrues, and the right of action accrues as soon as the original debt becomes due. In this view the complainant's right of action accrued certainly on the 7th of May, 1866, when he commenced his suit in which he recovered judgment, and the statute of limitations began to run on the 1st of January, 1867, until which date all statutes of limitations were suspended, under the constitutional amendment of 1865. The mere fact that the deeds of gift were not then registered would not affect the running of the statute, as we have seen, according to all the decisions. *Porter* v. *Cocke*, Peck, 41 ; *Stewart* v. *Harris*, 2 Swan, 636 ; *Knight* v. *Jordan*, 6 Humph. 101.

The result is that the first and second pleas are sufficient in law, and a good defence to the complainant's action. The third plea is, perhaps, defective in not showing that the possession was by actual enclosure. And the fourth plea is defective, because six years is not a bar to the complainant's right of action.

Decree accordingly.